# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Takenobu Matsugishi and Hitomi Matsugishi,

    Plaintiffs

v.

Peter Chen, et al.,

    Defendants

Case No.: 2:24-cv-01840-JAD-MDC

**Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Denying Plaintiffs' Motion for Preliminary Injunction**

[ECF Nos. 20, 24]

Plaintiffs Takenobu and Hitomi Matsugishi[1] sue Peter and James Chen, Bell Ventures, Inc., BV Trust, and Hb5 Holdings, LLC for fraud, conspiracy, and breach of contract stemming from a stock-transfer agreement that assigned Takenobu Matsugishi's 100% ownership of Bell Ventures to James Chen. Matsugishi claims that he did so based solely on fraudulent misrepresentations by the Chens, and that the Chens then used their newfound control of Bell Ventures to transfer property to other entities in order to convert Matsugishi's investments. Matsugishi moves for a preliminary injunction preventing the defendants from transferring or selling any more properties and requiring that they take steps to account for the proceeds they've received from those properties so far. For their part, the defendants move to dismiss, contending that the amended complaint fails to state any claim upon which relief can be granted and that Hitomi lacks standing.

---

[1] Because Takenobu is the main character in this dispute, I refer to the plaintiffs collectively as Matsugishi and use singular male pronouns throughout this order. And because Mr. and Mrs. Matsugishi share a last name, I refer to Hitomi Matsugishi by her first name when necessary. I refer to James and Peter Chen by their first names for the same reason. No disrespect is intended by doing so.

I deny in part the defendants' motion to dismiss because Matsugishi has more than sufficiently pled the bulk of his claims. But because two of Matsugishi's causes of action—constructive trust and statutory reorganization—are more accurately characterized as remedies and not claims, I dismiss them and grant Matsugishi leave to amend to refashion the allegations into valid claims or prayers for relief. I also find that Hitomi has established standing to pursue her conversion claim, but she hasn't shown that she has an interest in any of the other claims, so I dismiss all but Hitomi's conversion claim. I grant Hitomi leave to amend if she can plead true facts that establish standing. And I deny Matsugishi's preliminary-injunction motion because I cannot conclude that he is more likely than not to succeed on the merits of his claims or that the remaining preliminary-injunction factors tip sharply in his favor.[2] And in the interest of reducing delay, I lift the discovery stay previously imposed in this case and set a date by which the parties must file a proposed discovery plan and scheduling order.

## Background[3]

**A.    The Chens fraudulently gain control of Bell Ventures and transfer its properties.**

In 2018, Japanese citizen Takenobu Matsugishi formed Bell Ventures, a company created to hold real-estate investment properties in the United States.[4] He infused the company with nearly $10 million dollars in exchange for 100 shares, making him Bell Ventures' sole

---

[2] After reviewing the parties' briefs, I find this matter appropriate for disposition without oral argument. L.R. 78-1.

[3] These facts are taken from Matsugishi's amended complaint (ECF No. 13) and are not intended as findings of fact. I'm aware that the defendants dispute several of the allegations in the complaint. I do not discuss those disputes here, as this summary serves primarily to inform the analysis of the defendants' motion to dismiss. When those disputes are relevant to resolving Matsugishi's preliminary-injunction motion, I discuss them in that analysis.

[4] ECF No. 13 at 4, ¶ 18.

shareholder.[5]  Bell Ventures purchased 37 residential properties in Arizona and Florida with those funds.[6]  In 2022, Matsugishi appointed his nephew, James Chen, as the company's Director, President, Secretary, and Treasurer; Matsugishi's younger brother Peter Chen was appointed as its Vice President.[7]  Because Matsugishi lives in Japan and doesn't speak English, he relied on the Chens (who live in California) to manage Bell Ventures' day-to-day operations.[8]

In February 2023, Matsugishi authorized the transfer of his 100 shares to James, making James the company's sole shareholder.[9]  This transfer is central to the parties' dispute. Matsugishi alleges that he signed the transfer agreement only because he was misled by the Chens' fraudulent misrepresentations about its effect.  He claims that Peter "repeatedly told [him] over the telephone and/or through instant messaging that" the transfer was necessary for James to "carry out various procedures for Bell Ventures and ensure [] its smooth operation . . . ."[10]  "A material part [of] the Chen [d]efendants' proposition was the assurance and express promise that the transfer of shares was temporary and would be re-transferred back to [] Matsugishi upon request."[11]  Because Matsugishi does not speak English, he did not fully understand the English-language stock-transfer agreement that he was signing and "completely trusted" Peter's representations "to the effect that the instrument was in his and Bell Ventures' best interest."[12]

---

[5] *Id.*

[6] *Id.* at 5, ¶ 21.

[7] *Id.* at 5, ¶¶ 22–23.

[8] *Id.* at 5, ¶ 25.

[9] *Id.* at 7, ¶ 37; ECF No. 13-2 (stock-transfer agreement).

[10] ECF No. 13 at 7, ¶ 35.

[11] *Id.*

[12] *Id.* at 7, ¶ 38.

After the transfer, Matsugishi and Peter often discussed Bell Ventures operations through an instant-messaging app.  Matsugishi reiterated that he transferred his shares to James "so he'll be able to do his job more easily," and Peter assured Matsugishi that he "will continue to consult with [Matsugishi] about all matters concerning the company."[13]  They also discussed the potential that Matsugishi's son Toshiya would be involved in Bell Ventures, with Peter telling Matsugishi, "our greatest hope is that Toshiya will become independent as soon as possible, and James and I are always ready to hand over management and administration to him or help him out."[14]

Matsugishi alleges that the Chens took several actions to fraudulently wrest control of Bell Ventures from him throughout 2023.  Soon after the stock-transfer agreement was signed, "the Chen [d]efendants issued a share certificate designating [] James as the owner of 2,000,000 shares of Bell Ventures"—a certificate that Matsugishi alleges is void.[15]  When Matsugishi visited California in April, Peter brought him to a notary office to sign what Peter represented to be insurance documents for Bell Ventures' properties but in fact was another copy of the stock-transfer agreement assigning the company's shares to James.[16]  Peter also "facilitated the opening of bank accounts for Mr. and Mrs. Matsugishi in their own names and not for company purposes."[17]

About a year later, Matsugishi began demanding access to Bell Ventures bank accounts, but Peter refused to provide the information needed to access them while attempting to reassure

---

[13] *Id.* at 8, ¶¶ 42, 44.

[14] *Id.* at 8, ¶ 46.

[15] *Id.* at 8–9, ¶ 47.

[16] *Id.* at 9–10, ¶¶ 50–55.

[17] *Id.* at 9, ¶ 51.

Matsugishi that "all the company's money is in the company bank account" and that the Chens "have no intention of trying to devour the wealth you have painstakingly accumulated over 40 years in Japan."[18]  But according to Matsugishi, those assurances were "a blatant lie."[19]  He later discovered that the Chens created Hb5 Holdings, LLC—a "company in which [] Matsugishi holds no interest"—and transferred 27 of Bell Ventures' 37 properties to it.[20]  He also learned that the Chens sold two of the Florida properties without Matsugishi's authorization and against his "specific[] instruct[ion] . . . not to sell or transfer any of the [p]roperties . . . ."[21]  Matsugishi alleges that he has received no proceeds from those sales as their "rightful and ultimate beneficial owner."[22]  In October 2024, the Chens used proceeds from the sales and rental income from other properties to create BV Trust, for which Bell Ventures is the sole beneficiary and James is the sole trustee.[23]  The defendants then took out a $4,486,500 loan in Hb5 Holdings' name, "leveraging the stolen [p]roperties as security . . . ."[24]  Matsugishi alleges that, while the Chens were taking these actions, they "orchestrated a campaign of deception to conceal their theft" by refusing to answer Matsugishi's questions about Bell Ventures.[25]

---

[18] *Id.* at 10–12, ¶¶ 57–62.

[19] *Id.* at 12, ¶ 63.

[20] *Id.* at 12, ¶¶ 64–68 (detailing transfers of 22 Arizona properties on December 7, 2023, and 4 Florida properties on November 28, 2023).

[21] *Id.* at 13, ¶ 74.

[22] *Id.* at 12, ¶¶ 70–71.

[23] *Id.* at 13, ¶ 72.

[24] *Id.* at 15, ¶ 75.

[25] *Id*. at 15–16, ¶¶ 76–81.

**B.    Matsugishi sues.**

Matsugishi sues the Chens, Bell Ventures, Hb5 Holdings, and BV Trust for the unauthorized takeover of Bell Ventures.  He contends that the Chens committed fraud in the factum and fraudulent inducement when they obtained his signature on the stock-transfer agreement by misrepresenting its terms and tricking him into believing that the document—which was in English and Matsugishi alleges that he could not read—was revocable and only temporarily gave James the shares of Bell Ventures.[26]  As a result of that fraud, Matsugishi contends, the stock-transfer agreement is void.[27]  He alternatively alleges that the Chens' oral and written promises that they would transfer the stock back upon request constitutes a contract and that the Chens breached it.[28]

Matsugishi also asserts fraudulent-concealment, unjust-enrichment, and negligent-misrepresentation claims for the Chens' failure to inform him that they sold some properties and transferred others to Hb5 Holdings and BV Trust and for leveraging the properties to take out a nearly $5 million loan.[29]  He brings a conversion claim for the defendants' alleged theft of Bell Ventures' email accounts, banking accounts, lines of credit, and all of the funds associated with the company.[30]  He claims that all of the defendants' fraudulent activities give rise to civil-conspiracy and aiding-and-abetting liability, and he adds an elder-abuse claim under Nevada Revised Statute (NRS) 41.1395.[31]

---

[26] *Id.* at 16–18, ¶¶ 86–97.

[27] *Id.* at 17, ¶ 93.

[28] *Id.* at 19–20, ¶¶ 107–13.

[29] *Id.* at 21–24, ¶¶ 114–33 (fraudulent-inducement claim); 24–27, ¶¶ 134–50 (negligent-misrepresentation-and-concealment claim); 28–29, ¶¶ 157–63 (unjust-enrichment claim).

[30] *Id.* at 29–31, ¶¶ 164–75.

[31] *Id.* at 34–37, ¶¶ 190–211.

Two of Matsugishi's claims seek specific forms of relief. Claim six seeks the imposition of a constructive trust for "any profits derived from the [p]roperties, including through unauthorized loans using the [p]roperties as security."[32] He also pleads a claim for "statutory reorganization under NRS Chapter 78," alleging that after he discovered the Chens' fraud, Matsugishi issued corporate resolutions ousting the Chens from their positions at Bell Ventures and installing himself, his wife, and his son instead.[33] He seeks a "judgment and declaration confirming the efficacy of these corporate resolutions" and a permanent injunction restraining the Chens "from exercising any authority on behalf of the corporation" and denying them access to the corporation's financial accounts, information, or facilities.[34]

## Discussion

**A.    The defendants' motion to dismiss is, for the most part, denied.**

Federal pleading standards require a complaint to include enough factual detail to "state a claim to relief that is plausible on its face."[35] This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[36] Plaintiffs must make direct or inferential factual allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[37]

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss. The court must first accept as true all well-pled factual

---

[32] *Id.* at 27–28, ¶¶ 151–56.

[33] *Id.* at 31–32, ¶¶ 179, 181–83.

[34] *Id.* at 33, ¶ 189.

[35] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[36] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[37] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[38]  Mere recitals of a claim's elements, supported by only conclusory statements, are insufficient.[39]  The court must then consider whether the well-pled factual allegations state a plausible claim for relief.[40]  A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[41]  A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[42]

### 1. *Matsugishi adequately alleges Peter and James's participation in the fraudulent scheme to transfer ownership of Bell Ventures to state fraud-in-the-factum and fraudulent-inducement claims.*

To establish a fraudulent-inducement claim, a plaintiff must adequately allege (1) a false representation made by the defendants; (2) the defendants' "knowledge or belief that the representation was false," (3) the defendants' intention to induce the plaintiff to consent to the contract's formation; (4) the plaintiff's justifiable reliance upon the misrepresentation, and (5) damage resulting from such reliance.[43]  Fraudulent inducement focuses on false representations made to cause a plaintiff to sign a document he otherwise wouldn't sign, while fraud-in-the-factum (also known as fraud-in-the-execution) is "the sort of fraud that procures a

---

[38] *Iqbal*, 556 U.S. at 678–79.

[39] *Id.*

[40] *Id.* at 679.

[41] *Id.*

[42] *Twombly*, 550 U.S. at 570.

[43] *J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004) (internal citations omitted).

party's signature to an instrument without knowledge of its true nature or contents."[44] Matsugishi alleges that the Chens committed both varieties of fraud when they misrepresented the legal effect of the stock-transfer agreement, had him sign an English version of the agreement despite the fact that Matsugishi does not speak English, and told him that he was signing insurance documents when he was really signing a notarized version of the stock-transfer agreement.

The defendants' first criticism of these claims is that the amended complaint "impermissibly group[s]" the defendants together.[45]  Under Rule 9(b) of the Federal Rules of Civil Procedure, a party "alleging fraud [] must state with particularity the circumstances constituting fraud."[46]  This particularity requirement ensures that fraud claims are "specific enough to give defendants notice of the particular misconduct [that] is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."[47]  "Mere conclusory allegations of fraud are insufficient."[48]  And "in the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme."[49]  The defendants assert that the complaint "identif[ies] no false statements by either" James or Peter, so it is not adequately pled.[50]

---

[44] *Resolution Tr. Corp. v. Kennelly*, 57 F.3d 819, 822 (9th Cir. 1995) (quoting *Langley v. Fed. Deposit Ins. Corp.*, 484 U.S. 86, 93 (1987)); 17A Am. Jur. 2d Contracts § 210.

[45] ECF No. 20 at 10.

[46] Fed. R. Civ. P. 9(b).

[47] *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

[48] *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

[49] *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (cleaned up).

[50] ECF No. 20 at 10.

The defendants overlook the many statements that the complaint alleges Peter made in his efforts to convince Matsugishi to transfer his Bell Ventures shares to Peter and James. Matsugishi alleges that Peter told him that "in order to carry out various procedures for Bell Ventures and ensure . . . its smooth operation, it would be desirable and legally necessary to appoint [his son James] as president and transfer all Bell Ventures shares to him."[51] "A material part [of] the Chen [d]efendants' proposition was the assurance and express promise that the transfer of shares was temporary and would be re-transferred back to Mr. Matsugishi upon request."[52] The complaint details several other statements that Peter made to Matsugishi in an alleged effort to convince him that he and James were still running the company for Matsugishi's benefit.[53]

The defendants are correct that there are few allegations concerning misrepresentations made directly by James. But "there is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify *false statements* made by each and every defendant."[54] A plaintiff need only identify the role of each defendant in the scheme.[55] Here, that requirement is met. The complaint pins most of the false statements on Peter, while James's role in the scheme is made evident from his position in the company, his acceptance of the shares, his conduct in causing an additional 2,000 shares to be issued on his behalf, and other details. At this stage, and because the complaint adequately

---

[51] ECF No. 13 at 7, ¶ 35.

[52] *Id.*

[53] *See, e.g., id.* at 7–12, ¶¶ 31, 33, 35, 38, 41–46, 50–54, 58–59, 62.

[54] *Swartz*, 476 F.3d at 765.

[55] *Id.*

identifies "'the who, what, when, where, and how' of the misconduct charged," I find that Matsugishi has satisfied Rule 9(b)'s heightened pleading standard.[56]

The defendants next argue that Matsugishi's complaint contains "contradictory allegations" about the misrepresentations at issue, contending that "it cannot be that Dr. Matsugishi was induced into executing the stock-transfer agreement based on the purportedly fraudulent promise of re-transfer of the stock, but did not know [that] the stock was being transferred to James in the first place."[57] Defendants' interpretation of the complaint's allegations is bizarre and inaccurate. Nowhere in the complaint does Matsugishi allege that he didn't know that stock was being transferred to James; rather, he alleges that the Chen defendants falsely promised that Bell Ventures' shares were being transferred for the sole purpose of making it easier for James to run the business from the United States, but that the transfer was temporary and revocable and that they would be transferred back at Matsugishi's request. So the Chens' arguments concerning these "contradictory" allegations is not well taken.

The Chen defendants next suggest that it "strains credulity" to believe that an experienced businessman like Matsugishi would be fooled by their alleged misrepresentations.[58] They also dispute Matsugishi's difficulty with the English language.[59] But those arguments ask the court to disregard allegations in the complaint that it must take as true at this motion-to-dismiss stage and otherwise ask me to judge the credibility of Matsugishi's statements based on unsupported speculation.

---

[56] *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

[57] ECF No. 20 at 12 (cleaned up).

[58] *Id.* at 14.

[59] *Id.*

Finally, the Chen defendants argue that the complaint doesn't adequately allege that Matsugishi's reliance on the misrepresentations was justified.[60]  But the complaint contains sufficient facts from which it can be reasonably inferred that Matsugishi justifiably relied on the Chens' representations.  The familial relationship between the parties and the Chens' positions of power within the company demonstrate the trust that Matsugishi had in the Chens.  The Chens' communications post-transfer could have reasonably led Matsugishi to believe that they were continuing to act with the intent to further Matsugishi's interests.  These details support the inference that Matsugishi reasonably and justifiably relied on their representations.  Because Matsugishi's fraudulent-inducement and fraud-in-the-factum claims are adequately pled, I deny the defendants' motion to dismiss those claims.[61]

### 2. *Matsugishi has pled a valid alternative breach-of-contract claim.*

In the alternative to his fraudulent-inducement and fraud-in-the-factum claims, Matsugishi alleges that the Chens' oral and written promises to "re-transfer the Bell Venture shares" constitute an "ancillary contract, amendment, and/or the conditional delivery term" of the

---

[60] *Id.* (citing *Atl.-Pac. Processing Sys. NV Corp v. Plaut*, 2023 WL 2744660, at *8 (D. Nev. Mar. 31, 2023) (dismissing fraud claim because, "[t]hough plaintiff alleges what misrepresentations were made and what information was potentially omitted, it does not allege why it was justified in relying upon that information")).

[61] The Chens also argue that, because Matsugishi's reliance on their alleged promise that the transfer was temporary and revocable is contradicted by the terms of the written stock-transfer agreement, he cannot show that reliance was justifiable as a matter of law.  ECF No. 20 at 13 (quoting *Rd. & Highway Builders v. N. Nev. Rebar*, 284 P.3d 377, 381 (Nev. 2012) (holding that "the purported inducement cannot be something that conflicts with [the contract's] express terms, as the terms of the contract are the embodiment of *all* oral negotiations and stipulations").  But the case on which the Chens rely doesn't account for the allegations here that Matsugishi was induced to sign an agreement that he didn't understand.  Nor do they point to any express language in the stock-transfer agreement that necessary conflicts with Matsugishi's contention that he believed (based on the Chens' fraudulent misrepresentations) the transfer was temporary and revocable.  So I do not find that this is a basis to dismiss Matsugishi's fraud claims related to the stock-transfer agreement.

stock-transfer agreement.[62]  He claims that the Chens breached that contract "by tricking [him] into signing" the stock-transfer agreement "then refusing to return the shares . . . and by engaging in continual harassment and concealment of the true facts designed [to] permanently steal [Matsugishi's] valuable interest in Bell Ventures . . . ."[63]

The Chens contend that this claim fails because it contradicts the allegations in the fraudulent-inducement and fraud-in-the-factum claims.[64]  But Matsugishi pled his breach-of-contract claim in the alternative, as Rule 8(d)(2) of the Federal Rules of Civil Procedure permits him to do.[65]  The Chens also argue that the complaint fails to demonstrate that "there was a re-transfer provision or what its terms were."[66]  I find that the complaint sufficiently puts the Chens on notice of the oral and written representations that Matsugishi alleges formed the basis of this ancillary contract.  Because the Chens' arguments do not persuade me that Matsugishi has not stated a valid, alternative breach-of-contract claim, I deny their motion to dismiss that claim.

### 3.    Matsugishi has adequately pled his fraudulent-concealment and negligent-misrepresentation claims.

In Nevada, a defendant may "be found liable for misrepresentation even when the defendant does not make an express misrepresentation, but instead makes a representation [that]

---

[62] ECF No. 13 at 20, ¶¶ 108–09.

[63] *Id.* at 20, ¶ 110.

[64] ECF No. 20 at 18.

[65] *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single court or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

[66] ECF No. 20 at 18.

is misleading because it partially suppresses or conceals information."[67]  To state a claim for fraudulent concealment, a plaintiff must allege facts showing that the defendants intentionally concealed a material fact that they were under a duty to disclose "for the purpose of inducing the plaintiff to act differently" than he would have if he had known the fact, that the plaintiff "was unaware of the fact and would have acted differently" if he had known the concealed fact, and that the plaintiff sustained damages as a result.[68]  A duty to disclose may arise if the "parties enjoy a special relationship" in which "a party reasonably imparts special confidence in the defendant and the defendant would reasonably know of this confidence."[69]

Matsugishi alleges that the defendants concealed the material fact that, "between September 29, 2023, and March 7, 2024, they conveyed at least 27 of the 37 properties that Bell Ventures owns to themselves or to [] entities they purport [to] own and control, defendants Hb5 Holdings and BV Trust . . . ."[70]  He asserts that, "[a]s a result of their roles and affiliations within Bell Ventures and their relationship of trust with [] Matsugishi, [the d]efendants were under a duty to disclose these material facts."[71]  And Matsugishi alleges that he was unaware of those facts and would have acted differently had he known them by, "for example, oust[ing]" the Chens from Bell Ventures, "caus[ing] the shares of Bell Venture[s] to be immediately returned, and eliminat[ing] [the Chens'] authority to act for and on behalf of Bell Ventures."[72]

---

[67] *Blanchard v. Blanchard*, 839 P.2d 1320, 1322 (Nev. 1992) (quoting *Epperson v. Roloff*, 719 P.2d 799, 803 (Nev. 1986)).

[68] *Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 110 (Nev. 1998) (citation omitted).

[69] *Id.* (citing *Mackintosh v. Jack Matthews & Co.*, 855 P.2d 549, 553 (Nev. 1993)).

[70] ECF No. 13 at 21, ¶ 116 (cleaned up).

[71] *Id.* at 22, ¶ 121.

[72] *Id.* at 22, ¶ 122.

The defendants urge dismissal of this claim, arguing first that because James was the "sole shareholder of Bell Ventures" at the time these alleged transfers were made, he owed "no formal legal duty to Dr. Matsugishi as a matter of law."[73]  There are several things wrong with this argument.  First, the defendants ignore the fact that this action is predicated on the allegation that the stock-transfer agreement is void (or voidable) because it was fraudulently executed and induced.  So the factual statement that James is Bell Ventures' sole legitimate shareholder is contradicted by the assumed-true facts in the complaint.  And even if James owed "no formal legal duty" to Matsugishi, the complaint sufficiently alleges that Matsugishi reasonably imparted special confidence in the defendants because of the relationship between the parties and that the defendants knew of that confidence.  That's sufficient to plead the duty-to-disclose element of a fraudulent concealment claim under Nevada law.

The defendants next argue that the complaint doesn't contain any allegations that "the property transfers were used to induce Dr. Matsugishi into any action."[74]  But Nevada law merely requires a plaintiff to allege that he would have acted differently had he known the intentionally concealed facts.  Matsugishi alleges that he would have taken different courses of action if he had been told that the Chens were selling off or transferring properties.  At this stage, that's sufficient.  So I deny the defendants' motion to dismiss this claim.[75]  And because the

---

[73] ECF No. 20 at 15.

[74] *Id.* at 16.

[75] Nor do I credit the defendants' overarching argument that the complaint fails to differentiate the fraudulent conduct of each defendant.  The role that each defendant played in this allegedly fraudulent concealment is clear from the complaint: Peter and James Chen concealed the facts, and Hb5 Holdings and BV Trust were the entities used to divert properties from Bell Ventures.  Even under FRCP 9's heightened pleading standard, these allegations are sufficient to inform the defendants of what actions they are accused of taking and how each defendant participated in the fraudulent scheme.

defendants rely on the same arguments to urge dismissal of the plaintiffs' "negligent misrepresentation and concealment" claim, I deny the motion to dismiss that claim too.[76]

### 4.    The civil-conspiracy and aiding-and-abetting claims are sufficiently pled.

Matsugishi claims that all defendants engaged in a civil conspiracy and that Hb5 Holdings and BV Trust engaged in civil aiding and abetting, based on their "common goal of stealing the [at-issue] [p]roperties and therefore acquiring real estate valued at no less than $10 million for no consideration."[77]  He alleges that Hb5 Holdings and BV Trust "were aware of their role in assisting, encouraging, and giving material support to the breaches of duties described above and throughout [his] complaint."[78]

The defendants contend that these claims fail because Matsugishi's fraud claims are inadequately pled.  As discussed supra, however, I find that those claims satisfy FRCP 9(b), so that argument fails.  They next argue that the "the civil conspiracy and civil aiding and abetting claims wholly fail[] to identify the fraud on which they are based."[79]  The defendants' myopic read of those claims, seemingly detached from the inferences raised by the entirety of the complaint, is unconvincing.  It can be reasonably inferred from the complaint that the defendants allegedly conspired to fraudulently induce Matsugishi to permanently turn over his shares and to conceal their conversion of Bell Ventures properties.  So those claims may proceed.

---

[76] *See* ECF No. 20 at 15 n.6.

[77] ECF No. 13 at 34, ¶ 192.

[78] *Id.* at 35, ¶ 200.

[79] ECF No. 20 at 17.

16

1       **5.     *Matsugishi has also pled an adequate alternative unjust-enrichment claim.***

2       Matsugishi also claims that all of the defendants were unjustly enriched by their

3 fraudulent conduct.[80]  The defendants move to dismiss that claim because the plaintiffs allege a

4 breach of contract, and "[a]n action based on a theory of unjust enrichment is not available when

5 there is an express, written contract, because no agreement can be implied when there is an

6 express agreement."[81]  But FRCP 8(d) allows a party to present alternative theories of relief

7 "regardless of consistency."[82]  At this stage I conclude that Matsugishi has adequately pled his

8 unjust-enrichment claim as an alternative to his breach-of-contract claim, so I deny the

9 defendants' motion to dismiss this claim, too.

10       **6.     *Matsugishi's conversion claim may proceed.***

11       Under Nevada law, "conversion is a distinct act of dominion wrongfully exerted over

12 personal property in denial of, or inconsistent with, title or rights therein or in derogation,

13 exclusion, or defiance of such rights."[83]  "Liability for a claim of conversion is predicated upon

14 'an act of general intent, which does not require wrongful intent and is not excused by care, good

15 faith, or lack of knowledge.'"[84]  The Nevada Supreme Court has approvingly cited out-of-state

16 precedent explaining that "there is no liability for conversion if possession was assented to,

17

18

19

20
_____

[80] ECF No. 13 at 28, ¶¶ 157–63.

21 [81] *Leasepartners Corp. v. Robert L. Brooks Tr.*, 942 P.2d 182, 187 (Nev. 1997).

22 [82] Fed. R. Civ. P. 8(d)(2) & (3).

23 [83] *Edwards v. Emperor's Garden Rest.*, 130 P.3d 1280, 1287 (Nev. 2006) (cleaned up).

[84] *Dynamic Transit v. Trans Pac. Ventures*, 291 P.3d 114, 118 (Nev. 2012) (quoting *Evans v. Dean Witter Reynolds, Inc.*, 5 P.2d 1043, 1048 (Nev. 2000)).

1  'unless the assent was obtained by duress or from one lacking capacity to consent or was

2  obtained or acted upon fraudulently.'"[85]

3      Matsugishi alleges that the defendants incurred conversion liability when they refused to

4  "furnish access [to] Bell Ventures' email account, checking accounts, savings accounts,

5  investment accounts, trust accounts, loans, lines of credit," and other financial accounts owned

6  by Bell Ventures or Mr. and Mrs. Matsugishi.[86]  He asserts that the defendants "wrongly drew on

7  [his] funds without authorization and without permission and disbursed those monies to

8  themselves to facilitate the scheme of theft described in this complaint."[87]  The defendants

9  contend that Matsugishi hasn't adequately alleged conversion because the complaint infers that

10  he gave the Chens control of the accounts, so he cannot now allege that their exertion of control

11  over them was wrongful.[88]  But one can reasonably infer from the complaint's allegations that

12  Matsugishi ceded control of those accounts as a result of the fraudulent actions of the defendants.

13  So because any consent to the defendants' control may be mitigated by fraudulent inducement, I

14  conclude that Matsugishi has adequately pled a conversion claim here.

15

16      **7.      *Statutory elder-abuse claims are permitted by the Nevada Supreme Court, so Matsugishi's claim under NRS 41.1395 may proceed.***

17      Matsugishi alleges that the defendants' misconduct constitutes exploitation of an older

18  person under NRS 41.1395.[89]  The Matsugishis are over 60 years old, the statutory threshold for

19

20  ─────────────────

21  [85] *Blige v. Terry*, 540 P.3d 421, 431 (Nev. 2023) (quoting *Latimer v. Stubbs*, 161 So. 869, 869 (Miss. 1935)).

22  [86] ECF No. 13 at 29, ¶ 165.

   [87] *Id.* at 30, ¶ 168.

23  [88] ECF No. 20 at 19–20.

   [89] ECF No. 13 at 36–37, ¶¶ 205–11.

elder abuse, and they contend that the defendants' deceitful attempts to control and convert Bell Ventures' assets constitute exploitation as defined by the statute.[90]  The defendants contend that Nevada's elder-abuse statute doesn't provide a private right of action but is instead a special-damages provision, so Matusgishi's claim based on that statute must be dismissed.[91]

Under NRS 41.1395(1), "if an older person or a vulnerable person suffers a personal injury or death that is caused by abuse or neglect or suffers a loss of money or property caused by exploitation, the person who caused the injury, death[,] or loss is liable to the older person or vulnerable person for two times the actual damages incurred by the older person or vulnerable person."[92]  Some judges in this court have concluded that NRS 41.1395(1) does not create a separate cause of action and instead merely permits the recovery of special damages in the event that a defendant's tortious actions (brought through independent causes of action like negligence or intentional torts) harm a vulnerable or elderly person.[93]  But the Nevada Supreme Court recently issued an opinion referring to NRS 41.1395 as a "statutory cause of action" and distinguishing an elder-abuse claim under that statute from other negligence claims.[94]  So because it appears that Nevada's high court treats NRS 41.1395 as a cause of action, I deny the defendants' motion to dismiss the claim on that basis.

---

[90] *Id.* at 36, ¶¶ 207–10.

[91] ECF No. 20 at 21–22.

[92] Nev. Rev. Stat. § 41.1395(1).

[93] *See, e.g.*, *Borenstein v. Animal Found.*, 526 F. Supp. 3d 820, 840 (D. Nev. 2021).

[94] *See Yafchak v. S. Las Vegas Med. Invs., LLC*, 519 P.3d 37, 39–40 (Nev. 2022).

### 8.    *Matsugishi's statutory-reorganization and constructive-trust "claims" are dismissed with leave to amend.*

The defendants move to dismiss Matsugishi's sixth and ninth causes of action for constructive trust and statutory reorganization, respectively, because they are not valid claims.[95] Constructive trust, they argue, is a remedy, not a claim.  And they assert that Matsugishi's statutory-reorganization claim cites generally to NRS Chapter 78 (which contains statutes generally regulating private corporations) but fails to "identify any statutory provision in Chapter 78 that provides an independent cause of action upon which relief may be granted."[96]

I'm puzzled by Matsugishi's "statutory reorganization" claim.  In it, he alleges that after discovering the Chens' fraudulent actions he enacted corporate resolutions ousting them from Bell Ventures and appointing himself as the company's chairman of the board and its sole director.[97]  He also installed his wife Hitomi as president and his son Toshiya as the vice president, secretary, and treasurer.[98]  He contends that this triad constitutes the rightful ownership of Bell Ventures, and he seeks a "judgment and declaration confirming the efficacy" of the corporate resolutions and restraining the Chens from exercising any authority on behalf of the company or its financial accounts.[99]

This court has been unable to find support for any such "statutory reorganization" claim in Nevada law.  Based on the way Matsugishi's claim is presented, it instead appears to be a claim for declaratory relief, a prayer for injunctive relief, or both.  Because the claim's title

---

[95] ECF No. 20 at 20–21.

[96] *Id.* at 21.

[97] ECF No. 13 at 32, ¶ 181.

[98] *Id.* at 32, ¶ 180.

[99] *Id.* at 33, ¶ 189.

leaves one guessing at exactly what Matsugishi is trying to achieve with this "claim," I dismiss it with leave to amend to clarify whether this is a declaratory-judgment claim, some other recognized claim for relief, a prayer for injunctive relief, or some combination.

I also dismiss with leave to amend Matsugishi's "constructive-trust" claim. A constructive trust is an equitable remedy under Nevada law, not a standalone claim. "A constructive trust is a remedial device by which the holder of legal title to property is held to be a trustee of that property for the benefit of another who in good conscience is entitled to it."[100] So I dismiss his claim as it is currently presented, but I grant leave to amend for Matsugishi to restructure his request as one for equitable relief.

### 9.    *Hitomi Matsugishi has standing to pursue the conversion claim, but she has not shown a valid interest in the resolution of the remaining claims.*

The defendants argue that any claims brought on behalf of Hitomi Matsugishi should be dismissed because she lacks standing.[101] They contend that she has "nothing to do with this case" and hasn't shown that she personally suffered any injury from the defendants' alleged misconduct.[102] They acknowledge that Matsugishi "claims to have appointed" Hitomi as president of Bell Ventures after he discovered the Chens' conduct, but that appointment occurred after the defendants' "allegedly tortious activities" so, "to the extent [that Hitomi's] purported injury stems from her role as an officer and director of the company, she could not have been injured by James's actions."[103] Matsugishi responds that he self-funded Bell Ventures with

---

[100] *Klabacka v. Nelson*, 394 P.3d 940, 953 (Nev. 2017); *Waldman v. Miani*, 195 P.3d 850, 857 (Nev. 2008) (explaining that constructive trust can be a remedy to redress fraud and unjust enrichment).

[101] ECF No. 20 at 22.

[102] *Id.*

[103] *Id.*

marital community property, so Hitomi holds an interest in the company and, "by way of their fraudulent usurpations of Bell Ventures assets," the defendants damaged that interest.[104]  He also points out that the complaint's conversion claim alleges that the defendants seized accounts owned by "Bell Ventures or its principals, Mr. and Mrs. Matsugishi," so at the very least Hitomi has standing to pursue the conversion claim.

Article III of the Constitution "confines the federal judicial power to the resolution of 'cases' and 'controversies.'"[105]  "One of the essential elements of a legal case or controversy is that the plaintiff have standing to sue,"[106] which "ensures that litigants have 'a personal stake in the outcome of the controversy as to justify the exercise of the court's remedial powers on their behalf."[107]  To demonstrate Article III standing, a plaintiff must "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[108]  The injury must be "concrete and particularized," as well as "actual or imminent, not conjectural or hypothetical."[109]  Plaintiffs must demonstrate standing "for each claim" and "for each form of relief sought."[110]

I find that Hitomi has sufficiently pled an injury for the conversion claim because the complaint alleges that she may have owned some of the converted accounts as a principal of Bell

---

[104] ECF No. 29 at 19.

[105] *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting U.S. Const. amend. III, § 2) (cleaned up).

[106] *Trump v. Hawaii*, 585 U.S. 667, 697 (2018).

[107] *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 438 (2017) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976)).

[108] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

[109] *Id.* at 339.

[110] *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006) (citations omitted).

Ventures.[111]  But I'm not convinced that she has shown a concrete injury for any other claim.

Her contention in her opposition to the motion to dismiss that she has an interest in Bell Ventures

because it was funded by marital community property is unsupported by any allegations in the

complaint.  The Matsugishis also fail to support their argument with any authority to guide the

court's analysis about which marital-property laws should apply (Japan's?  Nevada's?) to

determine whether Hitomi has a stake in Bell Ventures that is sufficient to establish standing.

And because the Matsugishis appear to disclaim reliance on Hitomi's after-the-fact appointment

as President of Bell Ventures, I don't analyze whether that position confers standing.  I thus

dismiss all but the conversion claim with respect to Hitomi, but I grant the Matsugishis leave to

amend to plead facts that would establish Hitomi's standing to pursue the rest of the claims in the

complaint.

**B.    Although Matsugishi has adequately pled his claims, I cannot conclude that he is more likely than not to succeed on their merits, so I deny his preliminary-injunction motion.**

A preliminary injunction is an "extraordinary" remedy "never awarded as of right."[112]

The Supreme Court clarified in *Winter v. Natural Resources Defense Council, Inc.* that, to obtain

an injunction, plaintiffs "must establish that [they are] likely to succeed on the merits, that [they

are] likely to suffer irreparable injury in the absence of preliminary relief, that the balance of

equities tips in [their] favor, and that an injunction is in the public interest."[113]  The Ninth Circuit

recognizes an additional standard: if "plaintiff[s] can only show that there are 'serious questions

going to the merits'—a lesser showing than likelihood of success on the merits—then a

---

[111] ECF No. 13 at 29, ¶ 165.

[112] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

[113] *Id.* at 20.

1  preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiffs'

2  favor,' and the other two *Winter* factors are satisfied."[114]  Under either approach, the starting

3  point is a merits analysis.

4

5         **1.**      ***The record presents at most a 50/50 chance that Matsugishi will succeed on the merits of his claims.***

6       This dispute comes down to two very different accounts of how James Chen ended up

7  with control of Bell Ventures.  Matsugishi contends that the Chens manipulated him into

8  believing that he was executing a temporary transfer for the only purpose of facilitating their

9  ability to take various actions for the benefit of the company from the U.S.  The Chens, on the

10  other hand, swear through signed affidavits that Matsugishi intended that Bell Ventures was "for

11  the benefit of members of the Chen family living in the United States."[115]  Although Matsugishi

12  may have intended for his son Toshiya to take a role in the company at some point, it was

13  James's understanding that Matsugishi's "wife and son would be provided for by his significant

14  holdings in Japan."[116] The Chens contend that Matsugishi asked them to seek tax advice "to

15  understand the possible tax implications of his transferring ownership" to James and, once they

16  received that advice, Matsugishi transferred his shares.[117]

17

18

---

19  [114] *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

20  [115] ECF No. 30-1 at 3, ¶ 7; ECF No. 30-2 at 3, ¶ 6.

21  [116] ECF No. 30-1 at 3, ¶ 7; ECF No. 30-2 at 3, ¶ 6 (averring that Matsugishi "thought that

22  [Toshiya] could eventually have some role in the company's operations, though he did not trust him with ownership of the company" because Toshiya "has yet to complete his college education and has no experience in real estate or in business").

23  [117] ECF No. 30-1 at 3, ¶ 5; ECF No. 30-2 at 3, ¶ 8; ECF No. 30-9 (email from Peter to Matsugishi regarding tax advice).

The evidence that Matsugishi relies on to press his version of events—which largely consists of text messages between Matsugishi and Peter—could be interpreted to support the Chens' story just as easily as his own.  The conversations suggest that Peter planned to consult Matsugishi about the company after the shares were transferred to James, he was willing to have Matsugishi's son be involved in the company's affairs, and he was offended when Matsugishi sought access to Bell Ventures' bank account.[118]  None of the text messages demonstrate that Peter or James told Matsugishi that the stock transfer to James was temporary or revocable.  Nor do they unmistakably suggest that the Chens were taking actions to prevent Matsugishi from discovering any fraudulent actions.  Rather, the communications between Peter and Matsugishi could be just as easily understood as a younger brother's attempts to placate the older brother who gifted control of Bell Ventures to his son.

And the Chens provide additional communications that disrupt the complaint's narrative that they kept Matsugishi in the dark about some of their actions concerning Bell Ventures.  For example, the defendants attach a text chain in which Peter tells Matsugishi that he should expect to sign a document transferring his shares to James while he is visiting the United States.[119]  That message seemingly contradicts the allegation that Matsugishi was tricked into signing that document before a California notary because of Peter's representations that he was signing insurance documents.  This allegation underpins portions of his fraud-in-the-factum and fraudulent-inducement claims, so evidence suggesting that Matsugishi knew what he was signing seems to undermine his theory that the Chens were consistently misleading him about the nature of the stock-transfer agreement.

---

[118] *See* ECF No. 24-3.

[119] ECF No. 30-13.

Other messages that the Chens provide call into question the premise of Matsugishi's fraudulent-concealment claim. Some of them show that Peter told Matsugishi about the sale of the two properties that, in his complaint, Matsugishi contends that he was unaware of.[120] Indeed, the messages suggest that Matsugishi gave Peter express authorization to pursue those sales.[121]

In light of the conflicting factual record presented by the parties concerning crucial allegations in the complaint, I cannot conclude Matsugishi is more likely than not to succeed on his fraud claims. And because all of his other claims—conversion, civil conspiracy, unjust-enrichment, etc.—rely on a finding of fraud or negligence that could void the stock-transfer agreement and show that the Chens' actions related to Bell Ventures were not authorized, Matsugishi has failed to show that he is likely to succeed on those claims too.

### 2. There may be serious questions going to the merits, but the balance of hardships doesn't tip sharply in Matsugishi's favor.

Even if I were to conclude that there are serious questions going to the merits under the Ninth Circuit's sliding-scale approach to preliminary-injunctive relief, Matsugishi has not shown that he has suffered irreparable harm or that the balance of hardships tips sharply in his favor. Matsugishi contends that he will suffer irreparable harm because Bell Ventures owns real property, and loss of real property creates irreparable harm.[122] Though harm to real property may constitute irreparable harm in some instances, I hesitate to apply that broad principle here. The properties at issue are part of Bell Ventures' investment portfolio, and the value derived from those properties for the company is the rental income they generate instead of some

---

[120] ECF Nos. 30-17, 30-18, 30-19.

[121] *Id.*

[122] ECF No. 24 at 20–21.

intrinsic value of the properties themselves.  Without more from Matsugishi explaining why loss of these investment properties would amount to harm that cannot be remedied by compensatory damages accounting for any sale or lost rental income from the properties, I cannot conclude that Matsugishi has satisfied the irreparable-harm factor.[123]

But even if I credited Matsugishi's contention of harm, I cannot conclude that the balance of hardships tips sharply in his favor.  Matsugishi does not explain the hardship he faces if his requested injunctive relief is not granted.  He instead merely suggests that the defendants wouldn't face hardship because "they gave no consideration for the Bell Ventures stock" and thus they will "lose nothing because they contributed nothing."[124]  He contends that the injunctive relief he requests "seeks to preserve the properties and prevent their further sale or encumbrance . . . and preserve the income" that the properties generate until rightful ownership has been established.[125]

The Chens, however, suggest that the relief sought would severely diminish their ability to run Bell Ventures and continue managing and receiving income from the properties.  They contend that Matsugishi's request that they be enjoined from "taking any action to further dissipate, devalue, sell, transfer, or encumber any and all [p]roperties" could lead to harmful results if, for instance, a current tenant made an offer on a home.[126]  Rejecting that offer (assuming it's substantial) could devalue Bell Venture's holdings, leaving the defendant in a

---

[123] Matsugishi mentions additional considerations for the irreparable-harm factor in his reply.  I disregard those arguments.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief." (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003))).

[124] ECF No. 24 at 21.

[125] *Id.* (cleaned up).

[126] ECF No. 30 at 19.

Catch-22 between selling the property (and violating the injunction) and devaluing the property by refusing to sell (which would also violate the injunction).[127]  They also contend that Matsugishi's request that all income from the rental properties be placed in a separate account that cannot be accessed without a court order would severely harm Bell Ventures because maintenance costs "are paid entirely by the proceeds from the tenant[s'] rent."[128]  The company also uses rental payments to pay for "insurance, taxes, and debt service."[129]  Restricting the company's ability to use rental proceeds for the company's benefit thus could create severe hardship.  Matsugishi's only response to these assertions is that they are hypothetical and unsupported.[130]  But the defendants' concern about their ability to use rental proceeds to run Bell Ventures is at least supported by James Chen's declaration, and in the absence of any supported statement of hardship by Matsugishi, I cannot conclude that this factor tips in his favor.

Because Matsugishi has not shown that he is more likely than not to succeed on the merits of his claims and the balance-of-hardship factor doesn't tip sharply in his favor, I deny his preliminary-injunction motion.  I do not reach the public-interest factor because I find that it would not make a meaningful difference given the resolution of the first three factors.

---

[127] *Id.*

[128] *Id.* (citing ECF No 30-1 at 4, ¶ 16).

[129] ECF No. 30-1 at 4, ¶ 16.

[130] I don't address the discovery dispute playing out through these briefs about Matsugishi's requests for the defendants' bank-account information.  This case moves forward on almost all of Matsugishi's claims, and the parties are required to participate in discovery in good faith and provide information that is relevant to this action.  If the parties disagree about the relevance of certain requests, they must use the procedures contained in the Federal Rules of Civil Procedure to seek an order compelling discovery after fulfilling any meet-and-confer requirements.

**Conclusion**

IT IS THEREFORE ORDERED that the defendants' motion to dismiss **[ECF No. 20] is GRANTED in part and DENIED in part**. Takenobu Matsugishi's constructive-trust and statutory-reorganization claims are dismissed because they aren't claims. Matsugishi is granted leave to amend to plead a valid claim based on the facts contained in those sections of the complaint or to refashion them into proper prayers for relief. And because Hitomi lacks standing to pursue all but her conversion claim, I dismiss all but that claim as to her only. **If the plaintiffs wish to correct the deficiencies identified in this order, they must file a second-amended complaint by Monday, June 2, 2025.** If a second-amended complaint is not filed by that date, this case will proceed on Takenobu Matsugishi's claims for fraud in the factum, fraudulent inducement, breach of contract, fraudulent concealment, negligent misrepresentation, unjust enrichment, elder abuse, civil conspiracy, and aiding and abetting, and Takenobu and Hitomi Matsugishi's conversion claim.

IT IS FURTHER ORDERED that Matsugishi's motion for a preliminary injunction **[ECF No. 24] is DENIED.**

IT IS FURTHER ORDERED that **the stay of discovery imposed in this case is LIFTED**. The parties must submit their proposed discovery plan and scheduling order by **Monday, June 16, 2025.**

_____
U.S. District Judge Jennifer A. Dorsey
May 23, 2025